THE BOILDIEU.

(District Court, S. D. Florida. June 6, 1919.)

SALVAGE ☞48—RIGHT TO COMPENSATION—BENEFICIAL RESULT OF SERVICE.

    Services rendered by a motorboat to a stranded steamer, by carrying and placing an anchor astern, held not entitled to compensation as salvage services; it appearing from the weight of evidence that the anchor did not hold and had no effect, the steamer being afterward salved by a wrecking tug.

In Admiralty. Suit by Charles N. Moller against the French bark Boildieu. Decree for respondent.

H. H. Taylor, of Key West, Fla., for libelant.
Patterson & Harris, of Key West, Fla., for claimant.

CALL, District Judge. The facts appear from the evidence as follows: On the evening of March 30, 1919, the French bark Boildieu grounded on a shoal about five miles off Long Key. On the morning of March 31, the libelant, the owner of the motorboat Cossier, of the length of 45 feet, beam 14 feet, equipped with a 40 horse power gasoline engine, took out a fishing party from Long Key. The Boildieu was of three thousand tons burden, loaded with a general cargo, bound from New York to Nantes, France. About 9:30 a. m., the libelant ran alongside of the bark and offered himself and boat to assist in floating the bark, which offer, after some demur, was accepted, and a small anchor weighing 700 pounds was lowered to the stern of the Cossier, with some wire cable, and run out some 300 or 400 feet astern of the bark, and dropped in 21 feet of water. All labor, except actual running of the Cossier, was performed by mem-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bers of the crew of the Boildieu. The cable attached to this small anchor was carried through the stern chock to the capstan. Upon a strain being put on this cable, the anchor came home, whereupon a 1,400-pound anchor was run out under the same conditions as was the 700-pound anchor. The libelant claims that this last anchor held when a strain was put on it, but that the tide had fallen, and therefore the ship was not moved. Thereupon some conversation took place between the captain of the bark and the libelant as to paying for the services, and the captain then refused any further assistance from libelant, and libelant. at about 1:30 p. m., proceeded to take his party fishing.

The question to be decided in this case seems to me to be whether the services of libelant were instrumental in saving the ship and cargo. If they were, then salvage should be awarded under the facts of this case in the light of the law governing salvage awards. If such services did not contribute toward saving the ship and cargo, then, as I understand the law, no award should be made.

The contention of libelant is that the 1,400-pound anchor held, and thus prevented the ship from being driven by wind and sea higher up on the reef. The contention of the claimant is that the second anchor run did not hold, but when strain was put upon the cable came home. and exercised no influence upon the ship whatever. This contention of claimant is supported by the testimony of the officers of the wrecking tug, which came to the assistance of the bark, arriving about 5 p. m., of the 31st. These officers are disinterested witnesses, having no reason to belittle the efforts of libelant.

Leaving out of view the testimony of the captain and other members of the crew, who might be said to be interested in the result of their testimony, and relying only upon that of the officers of the wrecking tug, I am constrained to find that the efforts of the libelant and his boat in no way contributed to the floating of the bark, and therefore there is no basis upon which salvage can be awarded in this case.

A decree will be entered, dismissing the libel, at the costs of the libelant.